# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2326

_____

| | | |
|---|---|---|
| Tony L. Mann, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Phil Yarnell, Scott Umbarger, Mark | * | |
| Schindler, Chris Willett, City of | * | |
| Springfield, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: April 9, 2007
Filed: August 14, 2007

_____

Before WOLLMAN, COLLOTON, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Tony L. Mann brought a 42 U.S.C. § 1983 action against the City of Springfield (the City), and four of its police officers, Phil Yarnell, Scott Umbarger, Mark Schindler, and Chris Willett, alleging that the officers used excessive force in effectuating his arrest and that the City provided the officers inadequate training,

instruction, discipline, and supervision. Mann appeals from the district court's[1] grant of summary judgment to the appellees. We affirm.

## I.

The facts relevant to this appeal are as follows.[2] In the early evening of October 4, 2001, Mann fired a shot at pursuing police officers and fled to his home. Once there, he took a shower to "come down" off a methamphetamine high, and went to sleep. Meanwhile, Mann's wife, who then lived with him, traveled to the Springfield Police Department and reported that she had been a victim of domestic abuse earlier in the day. She further stated that Mann was in an irrational and paranoid state, that he had been using methamphetamine for five continuous days, that he had slept only four hours during that period, that he both cooked methamphetamine and kept firearms and ammunition at his home, that he had frequently threatened suicide, and that he had stated that he would "shoot it out with police" and would "[g]o out in a blaze of glory with a gunfight with police" if they tried to arrest him. This information was relayed to the officers that were at Mann's house preparing to arrest him. Using a loudspeaker, the officers repeatedly urged Mann to exit the premises. Mann did not respond. The officers eventually fired tear gas into the house and, shortly thereafter, Mann came out clad in a towel wrapped around his waist.

Because, as set forth in the discussion below, Mann's version of events consists of unsubstantiated speculation, our recitation of the facts is drawn exclusively from the officers' deposition testimony and the events depicted on a video recording of the

---

[1]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

[2]In its opinion affirming Mann's conviction of first degree assault on a law enforcement officer and armed criminal action, the Missouri Court of Appeals provided a more extensive recitation of the facts leading up to Mann's arrest. See State v. Mann, 129 S.W.3d 462 (Mo. Ct. App. 2004).

arrest made by Mann's neighbor. Mann himself has no recollection of the events that occurred subsequent to his first physical contact with police.

The officers testified that they ordered Mann to come under a fence, get down on his stomach, and put his hands behind his back. Although Mann moved to the designated location, he neither got down on his stomach nor placed his hands behind his back, causing the officers to believe that he was resisting arrest. Officers Schindler and Umbarger moved in to handcuff him. After Mann disregarded the repeated instructions to get on his stomach, Officer Willett had Rex, his canine, engage Mann's left leg at the calf in a bite and hold technique for roughly fifteen seconds while Schindler and Umbarger attempted to secure Mann in handcuffs. The officers testified that Mann struggled, slipped away from them, knocked the handcuffs out of Schindler's hands, and grabbed the barrel of Schindler's gun. They further testified that Mann rose to his feet in an attempt to escape, and that he continued to resist their attempts to handcuff him. Once Mann was on his feet, and while Schindler and Umbarger continued to try to forcibly cuff his hands behind his back, Officer Yarnell struck Mann five times, with short pauses between blows, in what Yarnell describes as a repeated application of a "brachial stun" technique.[3] He repeated the technique until it had the desired effect of immobilizing the resisting Mann so that the other officers could more easily handcuff him. The officers eventually got Mann back onto the ground and secured in handcuffs. He was removed from the scene by ambulance and was treated for his injuries.

---

[3]The Springfield Police Department's Standard Operating Guideline for the use of force permits the use of what officer Yarnell refers to as a brachial stun technique in response to defensive resistance. Appellee's App. at 10. The technique involves the application of an officer's forearm to an area of major muscle mass, such as the side of Mann's neck, in order to induce temporary paralysis. Id. Following the blow, the administering officer must ascertain whether the brachial stun had the intended effect before it is reapplied.

The district court, after considering the officers' testimony, the video, and pictures of Mann's injuries, concluded that there were no genuine issues of material fact and that the officers were entitled to summary judgment as a matter of law. The court ruled as a matter of law that, for Mann's purposes, the contents of the video were unclear and the video lacked probative value because, if anything, it supported the officers' account of events. The district court held that the video did not generate a matter of genuine dispute concerning material facts. Accordingly, the court held that in light of the information the police knew about Mann at the time of his arrest, Mann failed to present adequate evidence to support a claim that the officers had used objectively unreasonable force. Regarding the City, the court granted its motion for summary judgment because Mann had not provided any evidence of an existing unconstitutional municipal policy attributable to a municipal policymaker.

On appeal, Mann contends that his injuries and the video recording create genuine issues of material fact that the district court erroneously disregarded. He alleges that the facts in dispute could support a finding that the officers had used excessive force and that deficiencies existed in the City's training and policies.

## II. Discussion

We review a district court's grant of summary judgment *de novo*. Ferguson v. United States, 484 F.3d 1068, 1072 (8th Cir. 2007) (citing Keller v. United States, 46 F.3d 851, 853 (8th Cir. 1995)). "In order to survive a motion for summary judgment under § 1983, the plaintiff must raise a genuine issue of material fact as to whether (1) the defendants acted under color of state law, and (2) the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." Cooksey v. Boyer, 289 F.3d 513, 515 (8th Cir. 2002) (citations omitted). Summary judgment is appropriate in instances in which the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id. The nonmoving party may not rely on

allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The nonmoving party's allegations must be supported by "sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." Gregory v. City of Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992) (first alteration in original) (quotation omitted).

"The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person." Guite v. Wright, 147 F.3d 747, 750 (8th Cir.1998) (citations omitted). "The violation of this right will, of course, support a § 1983 action." Crumley v. City of St. Paul, 324 F.3d 1003, 1007 (8th Cir. 2003). An officer is entitled to qualified immunity when the force is "objectively reasonable in light of the facts and circumstances confronting" the officer. Guite, 147 F.3d at 750 (citing Graham v. Connor, 490 U.S. 386, 394 (1989)) (internal quotation marks omitted). "Once the predicate facts are established, the reasonableness of the official's conduct under the circumstances is a question of law." Tlamka v. Serrell, 244 F.3d 628, 632 (8th Cir. 2001) (citation omitted).

Objective reasonableness is determined by balancing the "nature and quality of the intrusion on [plaintiff's] Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." Ludwig v. Anderson, 54 F.3d 465, 471 (8th Cir. 1995) (citing Tennessee v. Garner, 471 U.S. 1, 8 (1985)). This analysis requires careful attention to the facts and circumstances of the case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. A court may also evaluate the extent of the suspect's injuries, Crumley, 324 F.3d at 1007, as well as standard police procedures. Ludwig, 54 F.3d at 472. Ultimately, the reasonableness

of the force applied must be judged from the perspective of a reasonable officer on the scene "rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396.

The officers at the scene had been told that Mann was in a paranoid, belligerent, drug-crazed state and intended to do violence to the police if and when they should attempt to arrest him. They also knew that Mann had fired a gun at pursuing officers to escape apprehension and had allegedly assaulted his wife. We conclude that, with this information in mind, a reasonable officer would approach the situation with heightened caution and would be primed to quickly apply appropriate force in response to any appearance of resistance or aggression. See Graham, 490 U.S. at 396-97 (noting that the reasonableness calculation must allow for the fact that officers "are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving").

Although Mann contends that the video creates genuine issues of material fact directly contradicting the testimony of the officers, from our examination of the video we are unable to identify any portion that contradicts the officers' recitation of events. To the extent that the video is clear (the night-time scene is poorly lit and much of the action is obscured), it contradicts Mann's version of events (which, we repeat, is itself not based on firsthand knowledge because of Mann's inability to remember the events surrounding his arrest).

Contrary to Mann's assertion, the video shows that he did not lie flat on his stomach when repeatedly ordered to do so, but remained twisting on his side when Officers Umbarger and Schindler approached him and attempted to handcuff him. In light of Mann's failure to comply with the officers' instructions and warnings, we cannot say that Officer Willett's use of Rex in a bite and hold maneuver on Mann's leg could be considered an unreasonable use of force for the purpose of bringing the non-compliant Mann under control. The canine was at all times on its leash and was

employed under Willett's direction.  Cf. Szabla v. City of Brooklyn Park, 486 F.3d 385, 391-96 (8th Cir. 2007) (en banc) (discussing the appropriate use of a canine when apprehending a suspect and holding that the isolated incident present did not support a claim that the City acted with deliberate indifference by inadequately training its officers on the use of canines).

Furthermore, contrary to Mann's assertion that he was under police control and compliant when he rose to his feet, it appears from the video that Mann had successfully evaded the officers' attempts to secure handcuffs on his wrists.  Even though the video does not affirmatively show Mann placing a hand on Officer Schindler's gun, and does not clearly depict the extent of Mann's resistance, the video does not visibly contradict the officers' version of events.  The officers' account, then, is not contested by any credible evidence.  When Officer Yarnell struck him, the only evidence available indicates that Mann was not handcuffed,  that he was still resisting at least to some degree, that he had not been complying with the instructions repeatedly shouted at him, and that he was not under complete police control.  This evidence, coupled with the knowledge of Mann's drug-induced mental state, prior violent activity, and stated purpose of having a fatal shootout with police if given the opportunity, justified the reasonable application of a stun technique.

Mann contends, however, that Yarnell did not apply a legitimate stun technique, but instead struck Mann's head rapidly with a closed fist.  Contrary to Mann's contention, the video appears to depict a series of blows delivered by Yarnell's forearm and elbow to the region of Mann's neck, with each blow punctuated by a noticeable pause before the delivery of the next.  Neither the video nor Mann's recitation of his injuries indicates that the maneuver represents anything other than the

proper application of a brachial stun made appropriate, in the circumstances, by the need to immobilize a recalcitrant and potentially dangerous suspect.[4]

Finally, Mann appears to contend that to the extent that the video is unclear, this ambiguity creates a genuine issue of material fact that must be interpreted in his favor.[5] His position reflects a misunderstanding of the applicable standard, however. "Although we view the facts in the light most favorable to the non-moving party, we do not accept unreasonable inferences or sheer speculation as fact." Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 800 (8th Cir. 2004). Had the video demonstrably contradicted material representations made by the officers, or had Mann or the neighbor who taped the video had a recollection of the events that differed from the officers' accounts, we might well have resolved the conflicting evidence in Mann's favor. Instead of offering facts that would have permitted a jury to make findings in his favor, however, Mann offers a dark and often unintelligible video coupled with an entirely speculative and wishful recitation of events that is neither substantiated by anything displayed in the video nor by the memory of any observer or participant present at the altercation. In these circumstances, a jury would be left with only the officers' recitation of events and the extent of Mann's injuries to help it comprehend those portions of the altercation not clearly visible in the video.[6]

---

[4]Although not much time passed between some of the earlier blows, between blows there was always a noticeable pause of sufficient duration for Officer Yarnell to have made the required assessment.

[5]As the district court observed, the video is dark and the audio portion often unintelligible.

[6] The injuries Mann suffered do not themselves create an inference of excessive force. Aside from the wound created by the dog bite, there is no way to tell from the video and the pictures of the injuries what caused his other injuries. For example, instead of creating the inference that Officer Yarnell intentionally struck him repeatedly with a closed fist to the head, the cuts and inflamation about his face could have just as easily resulted from the application of the stun technique on a struggling

Because what Mann offers amounts to "[m]ere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, . . . [he cannot] withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007); see also Fischer v. Andersen Corp., 483 F.3d 553, 557 n.6 (8th Cir. 2007) (noting that mere speculation, conjecture, or fantasy does not represent sufficient probative evidence to substantiate a party's allegations).

With respect to his suit against the City, Mann failed to present evidence of an official policy or widespread custom that resulted in his injuries. See Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998) (setting forth the requirements for a § 1983 suit against a municipality). Even had the video shown an excessive use of force, because Mann does not attempt to separately prove an unconstitutional municipal policy, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability . . . unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985); see also Szabla, 486 F.3d at 389-91 (discussing the requirements for establishing municipal liability in the absence of a facially unconstitutional municipal policy). Such proof is not included here.

The judgment is affirmed.

_____

---

target. That injury, and the abrasion on his right heel, could also have resulted from Mann's inadvertent contact with sharp objects or with officers while he was writhing on the ground.