ROBERT J. GLADWIN, Judge
Appellant Shawn Harris's appeal of the March 31, 2017 order of the Pope County Circuit Court denying his motion for summary judgment on the basis of qualified immunity is before this court a second time after we ordered rebriefing. See Harris v. Parrish , 2018 Ark. App. 58, 2018 WL 632245. After reviewing the new brief filed by Harris, specifically, the addition of the requested material in the abstract, it appears that Harris has sufficiently cured the deficiencies that caused the rebriefing order, and we now are able to reach the merits of Harris's claim that the trial court erred in denying his motion for summary judgment based on the defense of qualified immunity. Because genuine questions of material fact remain, we affirm.
I. Facts
Appellee James Parrish originally filed suit against various Pope County deputies, including Harris, Sheriff Aaron Duvall, and State Trooper Wilson Short in the United States District Court, Eastern District of Arkansas, Western Division. The suit alleged that excessive force was used upon Parrish during his arrest on April 14, 2012. Separate defendant Trooper Short filed a motion for summary judgment alleging that no excessive force was utilized against Parrish in his arrest. That motion was granted, and immediately thereafter, Parrish filed a voluntary nonsuit under Fed. R. Civ. P. 41. Subsequently, the present underlying suit was filed in the Pope County Circuit Court against the same defendants except for Trooper Short. All defendants filed for summary judgment, and following a hearing on the motions held on March 16, 2017, the trial court entered an order on March 31, 2017, granting summary judgment based on qualified immunity to all individually named defendants except for Harris. Harris filed his timely notice of appeal on April 6, 2017.
II. Standard of Review and Applicable Law
This appeal is pursued on an interlocutory basis pursuant to Ark. R. App. P.-Civ. 2(a)(10) (2017), which allows for an appeal to be taken from a trial court to the *478 Arkansas Supreme Court from "an order denying a motion ... for summary judgment based upon the defense of ... the immunity of a government official." Generally, the denial of a motion for summary judgment is neither reviewable nor appealable. See Martin v. Hallum , 2010 Ark. App. 193, at 8, 374 S.W.3d 152, 158 (citing City of Fayetteville v. Romine , 373 Ark. 318, 284 S.W.3d 10 (2008) ). However, this general rule does not apply when the refusal to grant a motion for summary judgment has the effect of determining that the appellant is not entitled to immunity from suit. Martin , supra. The rationale justifying such an interlocutory appeal is that the right to immunity from suit is effectively lost if the case is permitted to go to trial. Id.
The issue of whether a party is immune from suit is purely a question of law and is reviewed de novo. See Martin and Romine , supra ; see also Ark. R. App. P.-Civ. 2(a)(10). In Martin , our supreme court reiterated our general analysis regarding summary judgment:
Of course, our courts have repeatedly held that summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Gentry [v. Robinson , 2009 Ark. 634, 361 S.W.3d 788]. On appellate review, we determine whether summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. City of Farmington v. Smith , 366 Ark. 473, 237 S.W.3d 1 (2006). We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. [Smith v. Brt , 363 Ark. 126, 211 S.W.3d 485 (2005) ]. Our review focuses not only on the pleadings but also on the affidavits and other documents filed by the parties. Dodson v. Taylor , 346 Ark. 443, 57 S.W.3d 710 (2001). In viewing the evidence in the light most favorable to the party resisting the motion, we are not obliged to ignore incontrovertible evidence that is depicted on a videotape. Wallingford v. Olson , 592 F.3d 888 (8th Cir. 2010) (citing Scott v. Harris , 550 U.S. 372, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) ).
The issue of whether a party is immune from suit is reviewed de novo on appeal. Romine , supra. Whether summary judgment on grounds of immunity is appropriate on a particular set of facts is purely a question of law. Gentry , supra. Although the determination of whether there is a genuine issue of material fact is a question of law under these circumstances, it is a legal question that sits near the law-fact divide. Id. (citing Ashcroft v. Iqbal , 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ).
Martin , 2010 Ark. App 193, at 10-11, 374 S.W.3d at 159.
In Graham v. Underwood , 2017 Ark. App. 498, 532 S.W.3d 88, we stated that the purpose of summary judgment is not to try the issues, but to determine whether there are any issues to be tried. Id. If a moving party fails to offer proof on a controverted issue, summary judgment is not appropriate, regardless of whether the nonmoving party presents the court with any countervailing evidence. Id.
The Arkansas Supreme Court has held that even when there is no material dispute as to the facts, the court must determine whether reasonable minds could draw reasonable inconsistent hypotheses to render summary judgment inappropriate. Lipsey v. Giles , 2014 Ark. 309, 439 S.W.3d 13. In other words, when the facts are undisputed but possible inferences therefrom are, the court will consider whether those inferences can be reasonably *479 drawn from the undisputed facts and whether reasonable minds might differ on those hypotheses. Id. If so, summary judgment is not appropriate.
III. Discussion
The case arises out of the arrest of Parrish by deputies of the Pope County Sheriff's Department with assistance from the Arkansas State Police on April 14, 2012, in rural Pope County, Arkansas. At approximately 10:00 p.m., Pope County deputies, including Harris, were dispatched in response to a domestic disturbance at a mobile home situated on a parcel of pasture land owned by Parrish. Deputies arrived to discover a minor altercation involving intoxicated individuals. Parrish, the owner of the property, had also gone to the site to personally investigate the headlights that had suddenly appeared in the middle of his pasture.
When Parrish arrived on the scene, he was unaware that Pope County deputies had already arrived. The headlights and spot light of Harris's squad car apparently shone into Parrish's eyes, causing Parrish to drive off his pasture road into a ditch, becoming stuck. Parrish then walked onto the scene and eventually was told that he needed to leave due to the nature of the investigation being conducted by the Pope County Sheriff Department's deputies.
Parrish refused to leave and was advised that if he did not leave he would be placed under arrest. Parrish refused to leave and allegedly became argumentative with officers, which eventually led to him being (1) taken to the ground by a leg sweep issued by Harris, (2) subsequently handcuffed, (3) detained at the Pope County Detention Center, and (4) charged with resisting arrest, disorderly conduct, public intoxication, and interference with governmental operations. In the resulting Pope County District Court criminal trial, Parrish was found guilty on all charges.
Parrish then filed the precursor to this action in the United States District Court, Parrish v. Harris , No. 4:13-CV-526 (E.D. Ark. Sept. 9, 2013), ECF No. 1. The trial court granted a motion for summary judgment filed by Trooper Wilson Short based on the excessive-force claim against him filed by Parrish. None of the other named defendants pursued summary judgment in that initial case. Judge Miller's order granting summary judgment found that "even when viewing the facts in the light most favorable to Parrish, nothing supports his claim that the force used against him was excessive." Parrish, ECF No. 43. Following this ruling on summary judgment, Parrish dismissed all remaining claims against the remaining defendants pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii).
Approximately four months later, this case was commenced in the Pope County Circuit Court, and the trial court granted summary judgment for all defendants with one exception-the trial court denied Harris's claimed entitlement to qualified immunity. Parrish's claim of excessive force against Harris was brought solely under the Arkansas Civil Rights Act, see Arkansas Code Annotated section 16-123-105, and subsection (c) provides that "when construing this section, a court may look for guidance to state and federal decisions interpreting Civil Rights Act of 1871 as amended and codified in 42 U.S.C. § 1983." The Eighth Circuit Court of Appeals discussed qualified immunity in Greiner v. City Champlin , 27 F.3d 1346, 1351-52 (8th Cir. 1994) :
Accordingly, whether the officer is immune "ordinarily should be decided by the Court long before trial." Hunter v. Bryant , 502 U.S. 224, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (per curiam), or else much of the benefit of the rule will be lost.
*480 In addition, the U.S. Supreme Court has held that the "qualified immunity standard gives ample room for mistaken judgment by protecting all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant , 502 U.S. 224 -229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (quoting Malley v. Briggs , 475 U.S. 335, (1986) ) ; see also Bridgewater v. Caples , 23 F.3d 1447, 1449 (8th Cir. 1994).
The defense of qualified immunity was analyzed by our supreme court in Smith v. Brt , supra , in which it held that a motion for summary judgment based on the defense of qualified immunity is precluded only when the plaintiff has asserted a constitutional violation, demonstrated that the constitutional right is clearly established, and raised a genuine issue of fact as to whether the official should have known that the conduct violated such established rights.
In granting summary judgment in the initial federal district court case, the court held that Parrish was not subjected to excessive force when he was arrested on April 14, 2012. Harris urges that this holding negated the requisite condition precedent that Parrish's constitutional rights had been violated. He notes that when there is no constitutional violation, the remainder of the qualified-immunity examination never arises. Citing Coker v. Arkansas State Police , 734 F.3d 838, 842 (8th Cir. 2013), the federal trial court found that the use of force in this case was objectively reasonable under the circumstances-as judged from the perspective of a reasonable officer on the scene, without the benefit of hindsight. During an arrest, an officer is permitted to use some degree of physical coercion or threat. Coker , 734 F.3d 838. Additionally, a court must balance an individual's Fourth Amendment interests against the relevant government interest, which may include
[t]he severity of the crime; whether the suspect poses a threat of harm to others; whether the suspect is resisting arrest ... whether the situation is "tense, uncertain and rapidly evolving, which would force an officer to make "split-second judgments" about how much force is necessary.
Id. at 842-43. The severity of the plaintiff's injuries may also be considered, as well as whether the police used standard procedures. Mann v. Yarnell , 497 F.3d 822 (8th Cir. 2007).
Harris argues that even if this court were to conclude that a finder of fact could determine that he used excessive force in taking down Parrish with the leg sweep, that does not end the discussion on qualified immunity because there is no proof in the record to indicate that Harris knew his actions in apprehending Parrish violated clearly established constitutional law. His testimony was that in that moment he determined that Parrish was about to attempt to hit him.
Harris maintains that he did not engage in any conduct that violated Parrish's constitutional rights. However, Harris argues that even if this court were to conclude that he did, Harris argues that he would still be entitled to the defense of qualified immunity absent some proof that he intentionally violated Parrish's constitutional rights that evening while handling a "rapidly evolving" situation that led to his split-second decision regarding how much force was necessary under the circumstances pursuant to Coker .
We disagree and hold that the trial court did not err in denying Harris's motion for summary judgment based on qualified immunity. The record indicates that Parrish had set out to investigate an altercation occurring on property that he owns, and we hold that a material question of fact remains as to whether he posed a *481 threat to law enforcement officers at any time and whether Harris's use of force upon Parrish was objectively unreasonable and a violation of Parrish's constitutional rights.
The evidence viewed in the light most favorable to Parrish demonstrates that on reaching the gate to rental property owned by him, after driving across other fields that he also owns, Parrish was met by a spotlight, which blinded him and caused him to drive into a culvert. Only after Parrish yelled at the person holding the spotlight did the person yell back at him, command him to approach, and advise him that they were police. Upon approaching, the officers accused Parrish of being drunk. He made no aggressive moves toward the police, and at the time he was leg-swept to the ground by Harris, Parrish can be seen in the video to be making no gestures of any kind, except to reflexively withdraw his left hand as Harris attempted to grab it. The only move that could have been regarded as "aggressive," as identified by Deputy Sawdy, was that Parrish did not leave his own property when told to do so. Evidence indicates that Parrish was not able to leave the property on his own because he was not physically able to walk the required distance, and his vehicle was inoperable; however, he placed a call to his son-in-law, Rusty Davis, to come get him. According to officers' testimony, when Parrish attempted to explain that he was diabetic and not drunk, they told him to leave or they would arrest him. Because leaving at that time was impossible for him because he was unable to walk that far and his truck was stuck, Parrish ultimately verbally indicated that the officers should arrest him.
We hold that Parrish's constitutional rights were clearly established prior to Harris's actions in question. In Shannon v. Koehler , 616 F.3d 855, 862 (8th Cir. 2010), the Eighth Circuit established, in the context of a claim of excessive force, that
[t]he dispositive question is whether the amount of force the officer used was objectively reasonable. See Graham v. Connor , 490 U.S. 386, 396-97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In turn, "[t]he reasonableness of a particular use of force depends on the circumstances of each case, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.' " Wertish v. Krueger , 433 F.3d 1062, 1066 (8th Cir. 2006) (quoting Graham , 490 U.S. at 396, 109 S.Ct. 1865 ).
The officers' contradictory claims that Parrish presented a threat of some sort create, at best, an issue of fact for trial rather than a basis for summary judgment.
This case is factually similar to Perry v. Woodruff County Sheriff Department ex rel. Barker , 858 F.3d 1141 (8th Cir. 2017),[1] in which the Eighth Circuit affirmed the trial court's denial of a police officer's motion for summary judgment based on qualified immunity. In Perry , Officer Clark threw Perry to the ground, restrained his arms, and forced his knee into Perry's back. Perry , 858 F.3d at 1144-45. As with Parrish, Perry was found to have posed no threat to Officer Clark. Given these facts, the Eighth Circuit held that the officer's use of force was "objectively unreasonable as a matter of law." Id. at 1145. Though Parrish pleaded no contest to the charge of refusal to submit to arrest, viewed in light of Parrish's testimony, the video arguably shows that he was not acting in an aggressive or threatening manner, the other *482 officers were not acting in a defensive manner, and the sum of the evidence supporting the refusal-to-submit-to-arrest charge was his reflexively pulling his hand away when Harris reached for it.
Our supreme court analyzed this issue in Jackson v. State , 2013 Ark. 201, at 27 n.3, 427 S.W.3d 607, 623 n.3,
Thus, with the proliferation of "dash cam" and surveillance video evidence, an appellate court may arguably be in as good a position as the trial court to evaluate certain historical facts, assuming no corresponding authenticity or credibility-related issues need to be addressed. Cf. Scott v. Harris , 550 U.S. 372, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (reaching vastly different interpretations from those of the district court and Court of Appeals upon review of "dash cam" videotape depicting police chase of motorist). To the extent that an appellate court's analysis of probable cause or reasonable suspicion rests in part on interpretations of unchallenged video or audio evidence then arguably the justification for deference to the trial court's "better position" to evaluate facts tends to fade. And yet, there are countervailing notions rooted in the very structure of our trial court-appellate court system that suggest that fact-finding lies most appropriately in the trial courts' domain. In this case, the video was in my opinion inconclusive. Given the fact that the trial judge was both able to review it and to hear live testimony about it, I feel compelled to defer to the circuit court's factual findings and related inferences on this point.
Parrish argues, and we agree, that a jury should be entitled to consider his conduct and to make the determination as to whether Harris's use of force was objectively reasonable.
The facts of this case fall squarely within what the Eighth Circuit has characterized as a "run-of-the-mill" excessive-force case, and under those circumstances, certain effective presumptions have been established relating to the amount of force that may be used. See Shannon , supra (holding that assuming Shannon was not threatening anyone, not resisting arrest, it was unreasonable for Officer Koehler to use more than de minimis force against him). We agree with Parrish's assertion that a mere verbal argument does not remove his incident from this analysis.
We distinguish Harris's actions from the situation contemplated in Chambers v. Pennycook , 641 F.3d 898 (8th Cir. 2011), cited by Harris in his brief. Here, the video evidence shows Parrish-who is undisputedly elderly and infirm-slammed to the ground and having a knee placed in his back while his arms were dragged out from under his body. This is not analogous to the sort of "irritation, minor injury, and discomfort" contemplated by Chambers , which referenced the pain attendant to handcuffs being placed on the wrists. Chambers , 641 F.3d at 907.
We further hold that there is a material question of fact regarding Harris's argument that the actual harm inflicted on Parrish is evidence that the activities of the officers were "objectively reasonable." Simply because Parrish may have been fortunate that the physical damage was less than it could have been does not render Parrish's damaged ear, painful legs, injured wrist, and possibly resulting stroke de minimis. Whether injuries are de minimis is not the appropriate standard for evaluating excessive force under the Fourth Amendment. In Peterson v. Kopp , 754 F.3d 594, 601 (8th Cir. 2014), the court reiterated its prior holding in Chambers , supra :
We have held that de minimis injury does not foreclose a claim of excessive force under the Fourth Amendment.
*483 Chambers , 641 F.3d at 906. Rather, "[t]he appropriate inquiry is 'whether the force used to [a]ffect a particular seizure is reasonable.' " Id. (quoting Graham [v. Connor ], 490 U.S. at 396, 109 S.Ct. 1865 ).
Because there remains a material question of fact as to whether the force used by Harris was objectively reasonable under the circumstances, summary judgment was properly denied.
Finally, we acknowledge that in order to receive qualified immunity, a police officer must have at least "arguable probable cause" to make an arrest. Bernini v. City of St. Paul , 665 F.3d 997, 1003 (8th Cir. 2012). "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is objectively reasonable." Ulrich v. Pope Cty. , 715 F.3d 1054, 1059 (8th Cir. 2013). Despite Harris's argument as to the existence of probable cause to arrest Parrish on charges of disorderly conduct, obstructing governmental operations, and resisting arrest, we do not reach the merits of this argument. As previously discussed in Martin , supra , the question whether there was arguable probable cause for Harris to arrest Parrish for purposes of qualified immunity in this excessive-force claim and under these particular circumstances lends itself to be a legal question that "sits near the law-fact divide" and is a matter to be resolved at the trial court level.
We affirm the trial court's denial of Harris's motion for summary judgment.
Affirmed.
Glover and Whiteaker, JJ., agree.

Perry was handed down on June 5, 2017, approximately two months after the hearing before the trial court ruled on Harris's motion for summary judgment.