2012 Ark. 188

Darleen TRIPCONY, Appellant

v.

ARKANSAS SCHOOL FOR the DEAF,
Beth Gray, Andrew Tolbert, and Dr.
Doug Watson, Appellees.

No. 11–899.

Supreme Court of Arkansas.

May 3, 2012.

Denise R. Hoggard, Heather G. Moody, Chisenhall, Nestrud & Julian PA, Little Rock, for appellant.

Dustin McDaniel, Attorney General, Colin R. Jorgensen, Assistant Attorney General, for appellee.

ROBERT L. BROWN, Justice.

Appellant Darleen Tripcony appeals a decision of the Pulaski County Circuit Court dismissing her complaint against appellees Arkansas School for the Deaf (School); Beth Gray, in her individual and official capacity; Andrew Tolbert, in his individual and official capacity; and Dr. Doug Watson, in his individual and official capacity, for lack of subject-matter jurisdiction.[1] Because the circuit court did lack subject-matter jurisdiction to conduct a judicial review of the termination of a state employee, we dismiss the appeal.

On June 4, 2010, Tripcony filed a complaint against the School, Gray, Tolbert, and Dr. Watson in which she requested judicial review and declaratory and injunctive relief after she was terminated from her employment with the School as part of a Reduction in Force (RIF). Tripcony was serving as the Special Projects Coordinator, which included production of a newsletter, preparation of grant applications, and otherwise dealing with the press, at the time of her termination. According to her complaint, the Arkansas General Assembly had approved a budget for fiscal year 2009 that included funding for this position. On July 21, 2009, the interim Superintendent for the School recommended that Tripcony's employment be terminated as part of a RIF. That same date, the School's Board of Trustees voted to approve that recommendation and terminate Tripcony's employment.

Tripcony sought review of that decision from the Arkansas State Employee Grievance Appeal Panel (SEGAP). On April 23, 2010, that panel unanimously upheld the Board's RIF of Tripcony's position. SEGAP found that when a RIF is necessary, an agency is required to adhere to the Statewide Workforce Reduction Policy (Reduction Policy).[2] SEGAP found in its decision that under that policy, an agency is required to consider other options like hiring freezes, job attrition, reduction in work hours, and a pay cut before conducting a RIF. Because of the urgent necessity of adequate staffing in other areas of the School, SEGAP concluded that a hiring freeze or other alternatives were not viable. The School, according to SEGAP, faced a need for "hands-on employees" to staff "critical" positions to "insure that the needs of the emotionally and mentally challenged were properly serviced." SEGAP found that Tripcony's position was classified as "non-critical" because her job functions did not include direct contact with students. SEGAP further found that the RIF was "not unreasonable or in viola-

---

1. Gray was named in her official capacity as the Chair of the Board of Trustees for the School. Tolbert was named in his official capacity as the Vice Chair of the Board of Trustees. Dr. Watson was named in his official capacity as the Secretary of the Board of Trustees.

2. The Statewide Workforce Reduction Policy is issued and administered by the State Office of Personnel Management of the Division of Management Services of the Arkansas Department of Finance and Administration.

tion of policy" and that "[the School] substantially complied with the [Reduction Policy]."

On June 4, 2010, Tripcony filed a complaint in circuit court requesting judicial review of the affirmance by the School's Board of Trustees of the School's termination of her employment as well as the decision by SEGAP upholding the denial of her appeal. She further sought declaratory and injunctive relief against the School. In her complaint, Tripcony alleged that SEGAP, contrary to the evidence, testimony, and exhibits presented, failed to require adherence to the Reduction Policy; failed to assess the requirements of the Reduction Policy properly; and found compliance with the Reduction Policy for a RIF that was not required. She also prayed that the circuit court enjoin the School from terminating her employment and restore her to her former position as though the RIF had never occurred by declaring her termination to be void.

On August 16, 2010, the School, Gray, Tolbert, and Dr. Watson moved to dismiss Tripcony's complaint for failure to state a claim under Rule 12(b)(6) of the Arkansas Rules of Civil Procedure, lack of subject-matter jurisdiction, and sovereign and statutory immunity. Tripcony responded, and a hearing was held on the motion, at which time both parties appeared and made arguments to the court. After the hearing, the circuit court dismissed the complaint on the basis that it lacked subject-matter jurisdiction and that Tripcony's claim against the School's Board of Trustees was barred by the doctrine of sovereign immunity. The circuit court also dismissed her claims against Gray, Tolbert, and Dr. Watson in their individual capacities based on the doctrine of qualified immunity.

■ On appeal, Tripcony initially contends that the circuit court erred because it did have subject-matter jurisdiction to review the SEGAP decision. The first issue, then, that this court must resolve is whether the circuit court had subject-matter jurisdiction over Tripcony's claims. When the circuit court lacks subject-matter jurisdiction, the appellate court also lacks subject-matter jurisdiction on appeal. *Koonce v. Mitchell*, 341 Ark. 716, 719, 19 S.W.3d 603, 605 (2000).

■ We determine whether a court has subject-matter jurisdiction based on the pleadings. *Union Pac. R.R. Co. v. State ex rel. Faulkner County*, 316 Ark. 609, 612, 873 S.W.2d 805, 806 (1994). It is well settled that subject-matter jurisdiction is a court's authority to hear and decide a particular type of case. *Edwards v. Edwards*, 2009 Ark. 580, at 3–4, 357 S.W.3d 445, 448 (2009). A court lacks subject-matter jurisdiction if it cannot hear a matter under any circumstances and is wholly incompetent to grant the relief sought. *Id.* A court obtains subject-matter jurisdiction under the Arkansas Constitution or by means of constitutionally authorized statutes or court rules. *Id.* Where the issue of subject-matter jurisdiction requires interpretation of a statute or constitutional provision, this court's review is de novo. *Ark. Annual Conference of AME Church, Inc. v. New Direction Praise & Worship Ctr.*, 375 Ark. 428, 291 S.W.3d 562 (2009).

The circuit court determined that it did not have subject-matter jurisdiction to review Tripcony's claims based on this court's opinion in *Arkansas Livestock & Poultry Commission v. House*, 276 Ark. 326, 634 S.W.2d 388 (1982). In *House*, this court was asked to decide whether the discharge of an employee by the Arkansas Livestock and Poultry Commission was subject to review under Arkansas's Administrative Procedure Act (APA). The appellee, Dennis House, had been employed as a livestock inspector and

was discharged on the ground that his use of alcohol was interfering with his job performance. He was reinstated on probationary status after a grievance proceeding, but he was subject to immediate discharge for drinking on the job, while in uniform, in State-owned vehicles, or for failing to attend Alcoholics Anonymous meetings. During his probationary period he continued to drink alcoholic beverages and did not regularly attend AA meetings. As a result, he was terminated. He then filed suit in circuit court under the APA, challenging the recommendation of a fact-finding panel that he not be rehired until he demonstrated voluntary rehabilitation.

The Livestock and Poultry Commission moved to dismiss the complaint on the basis that termination of an employee is not an adjudication within the meaning of the APA. The circuit court did not grant that motion but found that there was substantial evidence to support House's termination. On appeal, this court addressed the jurisdictional question:

> [W]hen and under what circumstances an agency employee should be terminated is not a judicial function but a basic and perfunctory part of the administrative routine of an agency in its discharge of public business and nothing would be more inimical to the separation of powers than for the judicial branch to claim the power to monitor such decisions.

*Id.* at 329, 634 S.W.2d at 389.

Tripcony disagrees that the *House* decision applies to the facts of the instant case because (1) her position was created and funded by the General Assembly and the elimination of that position by the School, as part of the executive branch, does not constitute an administrative function; (2) review of a RIF by SEGAP is quasi-judicial in nature; and (3) judicial review is proper when an executive agency like the School acts in derogation of state law.

Neither SEGAP nor the circuit court made a finding that Tripcony's position was funded by the General Assembly. Yet, her complaint states that her position was funded by the General Assembly for fiscal year 2009–2010. In reviewing a court's decision on a motion to dismiss, this court treats the facts alleged in the complaint as true and views them in the light most favorable to the plaintiff. *Dukes v. Norris*, 369 Ark. 511, 514, 256 S.W.3d 483, 485 (2007). As a result, this court treats as true the allegation in Tripcony's complaint that her position was funded by the General Assembly.

The question, though, is to what extent the fact of legislative funding impacts whether the School's decision to terminate Tripcony was administrative or adjudicatory. The distinction is important because only adjudications are subject to review under the APA, and they are defined as any "agency process for the formulation of an order," not to include prisoner disciplinary proceedings. Ark.Code Ann. §§ 25–15–202(1) (Repl.2002), 25–15–212(a) (Repl. 2002). This court has held that it is only with respect to its judicial functions, which are basically adjudicatory or quasi-judicial in nature, that the APA purports to subject agency decisions to judicial review. *House*, 276 Ark. at 329, 634 S.W.2d at 389. Otherwise, courts lack subject-matter jurisdiction to examine administrative decisions of state agencies. *Id.*

To support her contention that the termination was judicial in nature, Tripcony cites this court to *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150 (1908). In that case, the Supreme Court of the United States discussed the distinction between judicial inquiries and legislative actions:

A judicial inquiry investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist.... Legislation, on the other hand, looks to the future and changes existing conditions by making a new rule, to be applied thereafter to all or some part of those subject to its power.

*Id.* at 226, 29 S.Ct. 67. Tripcony maintains that the decision by the School's Board of Trustees and SEGAP's decision to uphold the RIF were adjudicatory in nature, under the definition in *Prentis,* because those decisions declared and enforced liabilities based on past facts regarding whether the School had complied with RIF procedures under the Reduction Policy.

Despite this contention, Tripcony fails to show how *Prentis,* a case decided before the federal Administrative Procedure Act was adopted, has any bearing on cases that were filed under the APA in Arkansas. The discussion in *Prentis* centered on whether a rate-setting for an entire industry by the State Corporation Commission in Virginia was legislative or judicial in nature. The Court determined that it was legislative because the state commission was adopting a new rule for the future. Although *Prentis* discusses the differences between legislative and judicial acts, it does not do so within the context of the APA or within the context of whether an agency's decision to terminate an employee is administrative or adjudicatory. *Prentis* simply does not provide an analysis that is helpful to resolve the issue at hand.

This court has remained firm that discharge of an employee is not an adjudication but an administrative decision, and the circuit court is without jurisdiction to review such actions. *See, e.g., Viswanathan v. Mississippi Cnty. Cmty. Coll. Bd. of Trustees,* 318 Ark. 810, 812, 887 S.W.2d 531, 532 (1994); *House,* 276 Ark. 326, 634 S.W.2d 388. We agree that the termination of employees in state agencies is a day-to-day function of the executive branch, and the APA was never designed or intended to create supervisory authority by the judicial branch over such actions. *House,* 276 Ark. at 329, 634 S.W.2d at 389. The circuit court correctly determined that it lacked subject-matter jurisdiction to review the termination or RIF of an executive branch employee.

■ Tripcony next raises the specter that if the circuit court cannot review employee terminations or a RIF by a state agency, then the state is free to violate Arkansas laws designed to protect employees. She contends that her termination was wrongful because it was in violation of the Reduction Policy and, thus, was in violation of a clearly adopted public policy.

■ This court has repeatedly held that when an employee's contract of employment is for an indefinite term, either party may terminate the relationship without cause or at will. *See Sterling Drug, Inc. v. Oxford,* 294 Ark. 239, 245, 743 S.W.2d 380, 383 (1988). Where an at-will employee (one employed for an indefinite term) relies on a personnel manual or an employment agreement that expressly states that he or she cannot be discharged except for cause, the employee may not be arbitrarily discharged in violation of such a provision. *Id.* An at-will employee, in addition, has a cause of action for wrongful discharge if he or she is fired in violation of a well-established public policy of the state. *Id.* at 249, 743 S.W.2d at 385.

■ The public-policy exception, however, is a limited exception to the employment-at-will doctrine and is not meant to protect merely private or proprietary interests. *Id.* Indeed, we have said that public policy has been controverted when

the reason alleged to be the basis for a discharge is so repugnant to the general good as to deserve the label "against public policy." *Robinson v. Langdon,* 333 Ark. 662, 672, 970 S.W.2d 292, 297 (1998). Tripcony acknowledges that it is generally recognized that the public policy of a state is found in the state's constitution and its statutes. *See, e.g., Sterling Drug,* 294 Ark. at 249, 743 S.W.2d at 385. She further acknowledges that the Reduction Policy on which she relies is not found in the constitution or statutes of this state. Nevertheless, she maintains that the Reduction Policy is a state public policy that entails the exercise of delegated authority from the General Assembly to the executive branch subject to a statutory scheme relating to budget procedures. This policy, she asserts, was violated by the RIF.

Tripcony is wrong in this regard. The Reduction Policy itself belies her assertion that it provides an exception to the employment-at-will doctrine. Section I.B. of the Reduction Policy states that "[t]he policy does not constitute any employment contract or agreement, either express or implied, between the state agency and its employees. . . . This policy is subject to change without notice, wholly or in part." Statewide Workforce Reduction Policy, Arkansas Dep't of Finance & Admin. Office of Personnel Management, search "Statewide Workforce Reduction Policy." Hence, the fact that the Reduction Policy is subject to change without notice undercuts any contention by Tripcony that she could rely on its provisions in terms of her employment status or the procedures that would necessarily be followed in the event of her termination.

This court is convinced that the Reduction Policy does not constitute the same type of public policy that this court has recognized in previous wrongful-termination cases. This is so because it is a procedural policy and is not designed to protect the public or to protect employees from termination in violation of their civil rights. Examples of public-policy contraventions are when an employer discharges an employee for reporting a violation of state or federal law. *Northport Health Servs., Inc. v. Owens,* 356 Ark. 630, 645, 158 S.W.3d 164, 174 (2004) (citing *Sterling Drug,* 294 Ark. 239, 743 S.W.2d 380). Along the same line, this court has recognized that public policy was violated when an employee was forced to resign after reporting to the General Services Administration (GSA) that the employer had submitted false information during contract negotiations with the GSA. *Sterling Drug,* 294 Ark. at 249, 743 S.W.2d at 385. This court has also recognized that the public-policy exception applied when an employee was terminated after reporting the abuse and neglect of nursing-home residents to the employer and to the Office of Long Term Care. *Northport Health Servs.,* 356 Ark. at 645, 158 S.W.3d at 174. Likewise, a claim for wrongful termination in violation of a public policy will stand where an employee is terminated for rejecting solicitations to engage in sex in exchange for compensation. *Island v. Buena Vista Resort,* 352 Ark. 548, 563, 103 S.W.3d 671, 679 (2003).

These cited cases that recognize violations of public policy sufficient to support a cause of action for wrongful termination are not based on procedural violations. Instead, they are premised on violations of "whistleblower" statutes, criminal statutes, and statutes designed to protect the public from harm. Tripcony's allegation that her discharge was in violation of the Reduction Policy procedures simply does not rise to level of repugnancy that this court has previously recognized as violating public policy. *See Robinson,* 333 Ark. 662, 970 S.W.2d 292.

In short, Tripcony's allegations simply do not state a public-policy exception sufficient to warrant a deviation from our holding in *House* that there is no judicial review of termination of state employees. To reiterate in part, employee termination is "a basic and perfunctory part of the administrative routine of an agency in the discharge of public business." *House,* 276 Ark. at 329, 634 S.W.2d at 389. For the judiciary to monitor those decisions would be "inimical to separation of powers." *Id.* We decline the invitation to adopt a new exception to the *House* holding when the instant facts as set forth in Tripcony's complaint for judicial review and declaratory and injunctive relief fail to state a claim for wrongful termination based on violations of the Reduction Policy.

Because the circuit court lacked subject-matter jurisdiction over this matter, this court similarly has no jurisdiction to entertain an appeal regarding it. *Koonce v. Mitchell,* 341 Ark. at 719, 19 S.W.3d at 605. It necessarily follows that we also lack jurisdiction to decide the appeal relating to the immunity issues.

Appeal dismissed.