RAYMOND R. ABRAMSON, Judge
Appellant Phyllis Haley filed this one-brief appeal to challenge the amended divorce decree entered in her divorce from Kerry Haley. On appeal, Phyllis argues that the circuit court committed numerous errors meriting reversal. Specifically, she disputes the circuit court's findings related to the child-support award, the property division, the adjudication of a personal-injury claim she made against Kerry, and the refusal to award her attorney's fees. We affirm on all points.
I. Background
Phyllis and Kerry married in September 1992. During their nearly twenty-four-year marriage, they had two daughters. Phyllis and Kerry also amassed a significant amount of both real and personal property, which included four marital rental properties, nine rental properties owned exclusively by Phyllis as her nonmarital property, and a business Kerry began during the marriage-AnT Auto.
Phyllis and Kerry separated on June 8, 2016, and Kerry filed a complaint for divorce based on general indignities the next day. Phyllis answered Kerry's complaint and counterclaimed for divorce based on general indignities. At the time of the filing of the complaint and counterclaim, the younger daughter was a minor; thus, issues relating to her custody as well as child support required adjudication.
The circuit court held a temporary hearing in October 2016. At the opening of the hearing, the parties announced that they had reached an agreement on the majority of the temporary issues. Shortly thereafter, a temporary order was entered that memorialized the parties' agreement. Significantly, *114 this order awarded Phyllis custody of the minor child and required Kerry to make monthly child-support payments of $ 1217 beginning on November 5, 2016. The temporary order also provided that the parties would split the minor child's school tuition and other school-related expenses. Phyllis was awarded temporary possession of the marital residence, and the parties were ordered to equally divide the mortgage payment on the residence. With regard to the rental properties, the circuit court ordered that Kerry would "continue to maintain, be responsible for any expense, and collect rent" for the four marital rental properties and that Phyllis would "maintain, be responsible for any expenses, and collect rental for her nonmarital rental properties." Before the parties' separation, Kerry had managed both the marital and nonmarital rental properties.
Following the entry of the temporary order, Phyllis filed a motion to modify child support in February 2017, in which she sought retroactive child support from the date that Kerry filed his complaint for divorce-essentially, she requested that the circuit court award her support for the months of June through October 2016. Then in May 2017, Phyllis filed an amended counterclaim for divorce in which she alleged both general indignities and physical abuse as grounds for divorce. She also included in the amended counterclaim a personal-injury claim against Kerry, alleging that Kerry physically and emotionally abused her.
The circuit court held a final divorce hearing on June 8 and July 12, 2017. The parties stipulated that grounds for divorce were not contested and that Phyllis should be granted a divorce on her counterclaim. Kerry also consented to Phyllis's having custody of their minor child. The issues of Kerry's child-support obligation and division of the parties' property were sharply disputed. At the conclusion of the second day of the hearing, the circuit court took the matter under advisement and later telephoned the parties' counsel to announce its ruling.
The circuit court's ruling was reduced to writing, and a divorce decree was entered on September 25, 2017. One day later, the circuit court entered an amended divorce decree, which was substantially the same as the original divorce decree. Phyllis timely appealed from the amended divorce decree.
On appeal, Phyllis raises eight arguments in support of reversal.[1] Specifically, she contends the circuit court erred by (1) denying her request for retroactive child support; (2) allowing Kerry to retain the income collected from the four marital rental properties from July 2012 through July 2016; (3) allowing Kerry to retain the income collected from her nine nonmarital properties from July 2012 to July 2016; (4) denying her tort claim against Kerry; (5) denying her any portion of Kerry's 2016 bonus; (6) determining that Kerry had sold one-half of his interest in AnT Auto to his father; (7) finding that the 2015 tax refund was not a marital asset; and (8) refusing to award her a reasonable attorney's fee.
The record on appeal was lodged with our court in March 2018. Shortly thereafter, Kerry died, and his sister Kelly Elkins *115 was appointed as personal representative of his estate. In July 2018, Phyllis filed a motion for substitution of parties with our court, seeking to have Kelly Elkins substituted for Kerry. Our court granted her motion. As previously mentioned, the appellee did not file a responsive brief.
II. Standard of Review
We review divorce cases de novo on the record. Farrell v. Farrell , 365 Ark. 465, 231 S.W.3d 619 (2006). We will not reverse a circuit court's finding of fact in a divorce case unless it is clearly erroneous. McKay v. McKay , 340 Ark. 171, 8 S.W.3d 525 (2000). Notwithstanding that general premise, we review certain issues that arise in the context of this appeal such as attorney's fees and the award of retroactive child support using an abuse-of-discretion standard. See Heflin v. Bell , 52 Ark. App. 201, 916 S.W.2d 769 (1996) ; Tiner v. Tiner , 2012 Ark. App. 483, 422 S.W.3d 178.
III. Retroactive Child Support
We begin by analyzing whether the circuit court erred by refusing to award Phyllis retroactive child support. Phyllis asked the circuit court to award her retroactive child support from June through October 2016, which represents the time from when Kerry filed his complaint for divorce until the circuit court imposed a temporary child-support obligation. The circuit court denied Phyllis's request.
In support of reversal, Phyllis maintains that the circuit court allowed Kerry to shirk his responsibilities to his minor child and that the disparity in the parties' relative financial positions necessitated the award of retroactive support. As we evaluate this issue, we acknowledge that retroactive child support is not mandatory, but a circuit court may order it when the circumstances warrant it because the commencement date of an award of child support is a matter within the discretion of the circuit court. Pardon v. Pardon , 30 Ark. App. 91, 782 S.W.2d 379 (1990).
The circuit court did not specify its reasoning for denying Phyllis's retroactive-support request. However, the record contains ample evidence to justify the circuit court's refusal to award it. We note that the temporary order to which the parties agreed required Kerry to pay $ 1217 a month in child support. In the final decree, after discovery had been completed and a trial had been held, Kerry was ordered to pay significantly less in child support-$ 435.86 biweekly. In addition, the temporary order also obligated Kerry to pay one-half of the minor child's tuition and school-related expenses. Moreover, it required Kerry to service a significant portion of the parties' debt on a temporary basis in that it ordered him to pay one-half of the mortgage on the marital residence even though Phyllis was given possession of the property. Accordingly, it was within the circuit court's discretion to decline to award retroactive child support.
IV. Income from Rental Properties
In Phyllis's second and third points on appeal, she challenges the circuit court's refusal to require Kerry to pay her for a portion of the rental proceeds collected from both their marital and her nonmarital rental properties from July 2012 to July 2016. Because these points on appeal pertain to property division, our review is limited to whether the circuit court's findings were clearly erroneous. McKay , supra .
A. Marital Rental Properties
The evidence reflected that Phyllis and Kerry owned four marital rental properties, which Kerry managed. The vast majority of the disputed funds were collected before the parties' separation, which *116 occurred in June 2016. Moreover, the funds were deposited into a joint marital bank account. Nevertheless, Phyllis claimed that Kerry did not share the rental proceeds with her. Thus, she argued to the circuit court that she was entitled to receive one-half of the proceeds he collected from July 2012 to July 2016. The circuit court disagreed and found that Kerry was not obligated to pay Phyllis any of the rental income collected on marital properties during that time. Phyllis seeks reversal of this finding.
We give due deference to the circuit court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. Troutman v. Troutman , 2017 Ark. 139, 516 S.W.3d 733. Although we acknowledge Phyllis's testimony that Kerry did not share the rental proceeds with her, she admitted that she was not involved in their financial matters and knew very little about their finances. In fact, her sister, Tanya Jewell, who provided much of the testimony about the parties' finances, testified that Phyllis did not know how to balance a checkbook. Moreover, Phyllis did not present evidence that she was denied access to these marital funds or suffered financially in any manner on the basis of Kerry's control of the rental proceeds. Given this evidence, we cannot say that the circuit court clearly erred by finding that Phyllis was not entitled to one-half of the rental proceeds collected on marital property from July 2012 to July 2016.
B. Phyllis's Nonmarital Rental Properties
Turning to Phyllis's nonmarital rental properties, the evidence demonstrated that Kerry managed these properties from July 2012 through July 2016, and that the rental proceeds were deposited into a joint bank account. A total of $ 164,841 was deposited into a joint bank account during that time, and Kerry withdrew $ 89,602 from the account and Phyllis withdrew $ 2835. Importantly, neither party accounted for the money that had been withdrawn from the account. Phyllis asked the circuit court to award her one-half of the difference between their withdrawals. The circuit court denied her request.
Once again, our review is limited to whether the circuit court clearly erred, and we hold that it did not. As with the marital rental properties, the funds were collected primarily during the parties' marriage and placed into a joint bank account. Our law presumes that property placed in both spouses' names is marital property. Ark. Code Ann. § 9-12-315(a) (Repl. 2015). Phyllis was not involved in the parties' finances or management of the rental properties, and she produced no evidence that only Kerry, rather than the parties jointly, benefited from these withdrawals.
V. The Tort Claim
In her amended counterclaim for divorce, Phyllis included a claim for damages based on personal injuries she alleged Kerry inflicted on her. The circuit court denied her personal-injury claim. Because this is an appeal from a bench trial, our review of this finding is limited to whether it was clearly erroneous. Pianalto v. Pianalto , 2010 Ark. App. 80, 374 S.W.3d 67.
Phyllis claimed Kerry intentionally injured her, and she sought relief on this basis. Thus, she was pursuing a cause of action for the tort of battery, although this specific claim was not clearly articulated. A successful claim for battery would require Phyllis to prove that Kerry intended to cause harmful or offensive contact with her or acted with the intent to create the *117 apprehension of some harmful or offensive contact and that this contact resulted in and caused damages. See AMI Civ. 418 (2018).
As we undertake our review of this issue, we are reminded that it was Phyllis's burden to prove battery. The parties presented conflicting reports on Phyllis's alleged injuries. Phyllis testified that Kerry was violent and would push her and place his hands around her neck in anger. By contrast, Kerry testified that the fighting was mutual, that Phyllis drank to excess to the point of belligerence, and that during their altercations, he never intentionally hurt her but that he had restrained and possibly bruised her. Other witnesses, including Tanya Jewell and Phyllis's friend Tiffany Thompson spoke of seeing bruises on Phyllis but presented no personal knowledge relating to the origins of her injuries. Phyllis and Kerry's daughters each testified that they observed their parents engage in physical fights, but neither would identify an aggressor in those altercations.
Based on the evidence presented at trial, we hold that it was not clearly erroneous for the circuit court to deny Phyllis's tort claim. Significantly, only the parties offered any specific evidence of injuries or the absence thereof, and the parties' testimony directly conflicted. Moreover, Phyllis failed to present any evidence of damages she sustained from Kerry's alleged battery.
VI. Kerry's 2016 Bonus
Kerry earned a $ 28,000 bonus in December 2016, which was during the parties' marriage but after their separation. The circuit court did not divide the bonus, and Phyllis seeks reversal on this basis.
As a general matter, any bonus that accrues during the marriage is marital property subject to division. Wilson v. Wilson , 294 Ark. 194, 741 S.W.2d 640 (1987). However, the circuit court did not specifically rule on the issue of Kerry's 2016 bonus. Our caselaw is clear that Phyllis had the burden of obtaining a ruling on this issue to preserve it for appeal. Sloop v. Kiker , 2016 Ark. App. 125, 484 S.W.3d 696. In the absence of a ruling, our court will not reach an issue, nor will we presume a ruling from the circuit court's silence. Id. For this reason, we affirm on this point without reaching the merits of Phyllis's argument.
VII. AnT Auto
Kerry's ownership interest in AnT Auto was another source of dispute at trial. AnT Auto is a used-car lot that Kerry opened during the marriage in early 2016. In the initial February 2016 application to become a used-motor-vehicle dealer, Kerry listed himself as the sole owner of AnT Auto. Then, on March 31, 2016, Kerry purported to sell 100 percent of his interest in AnT Auto to his father, Floyd, for $ 100. In January 2017, AnT Auto's used-motor-vehicle license was renewed, and both he and Floyd were listed as owners of AnT Auto. Notably, the insurance documents included in the renewal application identified only Kerry as a named insured.
At trial, Kerry sought to avoid any distribution of AnT Auto based on his alleged sale of the business to Floyd. Alternatively, Phyllis requested that the circuit court distribute one-half of the business to each of them based on Kerry's sole ownership of the business. Instead, the circuit court found that Kerry and his father each shared a one-half interest in AnT Auto and awarded Phyllis one-half of Kerry's one-half interest in it.
On appeal, Phyllis seeks reversal, claiming that it was clear error to find that Kerry had any interest in AnT Auto other *118 than 100 percent. She maintains that one could easily conclude that Kerry executed the sale document and the other documents listing him and Floyd as co-owners to create the impression that he had disgorged himself of assets. Irrespective of her argument, it is the circuit court's duty to act as the fact-finder and our review is limited to whether those findings were clearly erroneous. McKay , supra .
Here, there is ample evidence to support the circuit court's findings. After the alleged sale of AnT Auto, a used-motor-vehicle dealer-renewal application was filed in March 2017, and it listed both Kerry and Floyd as owners. Although the insurance documents attached to the renewal application list Kerry as the named insured, this is not dispositive of the ownership issue. All other documents in the renewal application list Kerry and Floyd as co-owners. Accordingly, we hold that the circuit court did not clearly err in its distribution of AnT Auto.
VIII. The 2015 Tax Refund
Phyllis also argues that the circuit court erred by finding that the parties' 2015 joint tax refund was not a marital asset subject to division. We begin by noting that in the heading of Phyllis's brief, she indicates that she seeks reversal of the circuit court's decision to refuse to divide the proceeds of the 2015 tax refund; however, Phyllis argues in the body of her brief that it was error to refuse to divide the proceeds of the parties' 2016 tax refund.
We do not reach the merits of Phyllis's argument regardless of which year's tax refund Phyllis challenges. The circuit court did not specifically rule on the disposition of either the parties' 2015 or 2016 tax refunds, and Phyllis had the burden of obtaining a ruling on this issue to preserve it for appeal. Sloop v. Kiker , 2016 Ark. App. 125, 484 S.W.3d 696. Accordingly, we summarily dispose of this issue and affirm the ruling of the circuit court.
IX. Attorney's Fees
Finally, Phyllis challenges the circuit court's refusal to award her attorney's fees. The award of attorney's fees in a domestic-relations case is a matter within the circuit court's discretion, and there is no fixed formula for determining what constitutes a reasonable amount. Webb v. Webb , 2014 Ark. App. 697, 450 S.W.3d 265. Because the circuit court presides over the case and gains familiarity with it as well as the extent and quality of the services rendered by the attorney, it has a superior opportunity to assess the critical factors, and we will not set aside an award of attorney's fees absent an abuse of discretion. Tiner v. Tiner , 2012 Ark. App. 483, 422 S.W.3d 178.
As a preliminary matter, Phyllis argues that we must, at a minimum, remand this issue to the circuit court because it did not provide its reasoning for refusing to award attorney's fees. We disagree. There is no requirement for the circuit court to make specific findings when it denies a request for fees.
Next, Phyllis contends the decision requiring each party to bear his or her own fees should be reversed because the equities require that she receive a reasonable attorney's-fee award. Specifically, she emphasizes that she has less disposable income than Kerry and that Kerry controlled their finances-including her nonmarital assets-for many years.
On issues of attorney's fees, we give deference to the circuit court's decision. Phyllis has failed to demonstrate that the circuit court abused its discretion. We acknowledge the contentious nature of the proceedings before the circuit court. Additionally, we note that the evidence demonstrated *119 that Phyllis owned timberland as well as nine nonmarital rental houses. Phyllis admitted that since taking over the management of her nonmarital rental properties, she has been netting between $ 3000 and $ 3500 a month, which is significantly more than the $ 750 biweekly income she reported on her affidavit of financial means. Accordingly, we hold that the circuit court was within its discretion to refuse to award Phyllis attorney's fees.
X. Conclusion
Having considered each of the arguments presented by Phyllis, we hold that she has failed to demonstrate any reversible error and affirm the circuit court's amended divorce decree.
Affirmed.
Virden and Vaught, JJ., agree.

We note that Phyllis's brief fails to strictly adhere to our rules. For example, it deviates from Arkansas Supreme Court Rule 4-2(a)(5)(B), which prohibits the use of the question-and-answer format except for "extraordinary situations where a short exchange cannot be converted to a first-person narrative without losing important meaning." Despite this deficiency, we reach the merits of her appeal but caution counsel to be mindful of our rules in the future.