Cite as 2025 Ark. App. 242

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-23-798

| | |
|---|---|
| CITY OF HIGHFILL, ARKANSAS; JEFFERY BRENAMAN, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; AND MAYOR MICHELLE RIEFF, IN HER OFFICIAL AND INDIVIDUAL CAPACITIES<br><br>APPELLANTS<br><br>V.<br><br>SHANA SCANTLIN AND TAMMY RIDENHOUR<br><br>APPELLEES | Opinion Delivered April 23, 2025<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04CV-21-1869]<br><br>HONORABLE XOLLIE DUNCAN, JUDGE<br><br>AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

**RAYMOND ABRAMSON, Judge**

The Benton County Circuit Court denied appellants' motion for statutory and qualified immunity for all claims made against them. In this interlocutory appeal, appellants contend that the circuit court erred in denying their request for statutory and qualified immunity. We affirm in part and reverse and remand in part.

I. *Background*

Shana Scantlin began working as an administrative assistant in the public works department for the City of Highfill in January 2020; likewise, Tammy Ridenhour began working in the same department in August 2020. Both Scantlin and Ridenhour were employed by the City of Highfill in these positions until early March 2021, when they

tendered their resignations. Scantlin and Ridenhour attest that Jeffery Brenaman, their direct supervisor, created "an unhealthy and hostile" work environment complete with "intimidation, insults, humiliation, work interference, assault, threats of assault, verbal and psychological abuse, and bullying."

To support these claims, Scantlin and Ridenhour note in their complaint and depositions that Brenaman, on multiple occasions, would yell at Scantlin while she was on the phone with customers, and at least twice, customers had asked if Scantlin was okay. They testified that Brenaman would frequently storm out and slam doors, including one instance in which Brenaman slammed the door in Scantlin's face. Brenaman would also frequently "overtalk" Scantlin and tell her to "stay in her lane." Specifically, Scantlin alleges that in November 2020, Scantlin retrieved documents from Brenaman's office at the request of Mayor Rieff. Brenaman became "irate" when he found out and began screaming and insulting Scantlin for entering his office. Scantlin made a formal complaint regarding this incident and claims that no action was taken. Scantlin next alleges that in January 2021, Brenaman became angry regarding a bill that was received for telephone-repair costs. Brenaman stormed into Scantlin's office, stood over her and yelled at her in front of the entire office, "ripped" papers out of her hand, and stopped only when Highfill Police Chief Blake Webb arrived and intervened. The situation came to a head on March 4, 2021, when Brenaman became irate at Scantlin again, yelled at her to "be quiet," and then "slammed" the door while leaving the office before returning. Ridenhour alleges that she became

2

terrified that Brenaman was going to retrieve a gun and called her husband to determine what actions she should take.

Scantlin and Ridenhour attest that they told Mayor Rieff that this behavior was ongoing and was not improving. Scantlin admits that on at least one occasion, Brenaman apologized to her after Mayor Rieff had spoken to him. Noting what they deemed a lack of response, Scantlin and Ridenhour submitted their resignations in March 2021. Ridenhour explicitly listed Brenaman's verbal abuse and Mayor Rieff's subsequent failure to act on her knowledge of his behavior as the reason for her resignation. Scantlin and Ridenhour then sued appellants, alleging several causes of action, including (1) wrongful discharge in violation of public policy; (2) wrongful discharge in violation of the Arkansas Whistle-Blower Act; (3) assault and battery; and (4) intentional infliction of emotional distress (outrage). Appellants moved for summary judgment, alleging that they are entitled to both statutory and qualified immunity. The circuit court denied their initial motion and their motion to reconsider, without comment. Appellants then filed this interlocutory appeal.

## II. *Standard of Review*

This court has jurisdiction to hear statutory- and qualified-immunity issues pursuant to Rule 2(a)(10) of the Arkansas Rules of Appellate Procedure–Civil, which provides that "[a]n order denying a motion to dismiss or for summary judgment based on the defense of sovereign immunity or the immunity of a government official" is an appealable order. However, Rule 2 does not authorize an interlocutory appeal from the denial of a motion for summary judgment generally. Ark. R. App. P.–Civ. 2(a). In fact, the general rule is that the

denial of a motion for summary judgment is neither reviewable nor appealable. *Gentry v. Robinson*, 2009 Ark. 634, 361 S.W.3d 788. Nonetheless, we have recognized that where the refusal to grant a summary-judgment motion has the effect of determining that the appellant is not entitled to immunity from suit, an interlocutory appeal is permitted since the right of immunity from suit is effectively lost if a case goes to trial. *Id.* As such, we lack jurisdiction at this time to decide on appeal any issue other than whether the circuit court erred in denying summary judgment on the issue of immunity. *See City of Farmington v. Smith*, 366 Ark. 473, 477, 237 S.W.3d 1, 4 (2006) (addressing only the immunity claim and not "the merits of the numerous arguments raised").

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Martin v. Hallum*, 2010 Ark. App. 193, at 10, 374 S.W.3d 152, 159. On appellate review, we determine whether summary judgment was appropriate by deciding whether the evidentiary items presented by the moving party in support of the motion leave a material question of fact unanswered. *City of Farmington*, 366 Ark. 473, 237 S.W.3d 1. We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings but also on the affidavits and other documents filed by the parties. *Dodson v. Taylor*, 346 Ark. 443, 57 S.W.3d 710 (2001). The issue of whether a party is immune from suit is reviewed de novo on appeal. *City of Fayetteville v. Romine*, 373 Ark. 318, 284 S.W.3d 10 (2008). Whether summary judgment on grounds of immunity is appropriate on a particular set of facts is purely a question of law.

4

*Gentry*, 2009 Ark. 634, at 10, 361 S.W.3d at 794. Although the determination of whether there is a genuine issue of material fact is a question of law under these circumstances, it is a legal question that sits near the law-fact divide. *Martin*, 2010 Ark. App. 193, at 11, 374 S.W.3d at 159.

### III. *Statutory Immunity*

Appellants' first point on appeal is that they are entitled to statutory immunity as provided in Arkansas Code Annotated section 21-9-301 (Repl. 2022). We have stated that section 21-9-301 "establishes . . . an immunity defense." *W. Memphis Sch. Dist. No. 4 v. Cir. Ct. of Crittenden Cnty.*, 316 Ark. 290, 295, 871 S.W.2d 368, 371 (1994). According to appellants, the statute affords them a "broad grant of immunity" as state actors. The statute states in pertinent part:

> (a) It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, public charter schools, special improvement districts, law enforcement agencies for and certified law enforcement officers employed by a public or private institution of higher education, and all other political subdivisions of the state and any of their boards, commissions, agencies, authorities, or other governing bodies shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance.

Ark. Code. Ann. § 21-9-301(a).

Appellants have provided evidence that the City of Highfill does not have liability insurance. Accordingly, the City of Highfill is entitled to statutory immunity, and the circuit court erred in denying it such immunity.[1]

As appellants recognize, section 21-9-301 provides immunity from civil liability for negligent acts but not for intentional torts. *Deitsch v. Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992). Intentional torts involve consequences that the actor believes are substantially certain to follow his actions. *Baptist Health v. Murphy*, 365 Ark. 115, 226 S.W.3d 800 (2006). Accordingly, it is a deliberate, knowing tort that bars application of the doctrine of qualified immunity. *See Williams v. Pate*, 2015 Ark. App. 327, at 6, 463 S.W.3d 734, 737; *Passmore v. Hinchey*, 2010 Ark. App. 581, 379 S.W.3d 497 (a trespass occurring deliberately and with the knowledge is sufficient invoke the intentional-tort exception to statutory immunity). Appellants contend, however, that the facts in appellees' complaint amount to nothing more than negligence claims; thus, they are entitled to statutory immunity.

A. Battery

---

[1]The appellants also argue, in part, that Ark. Code. Ann. § 21-9-301 also grants statutory immunity to all individuals who do not have liability insurance. As support for this claim, appellants cite *Benton School District v. Greer*, 2023 Ark. 160, 677 S.W.3d 700. *Benton* was solely concerned with whether the Arkansas Civil Rights Act was included in the statutory immunity afforded to those listed in section 21-9-301. *Benton* does not hold that individuals themselves are immune if not covered by liability insurance. Furthermore, since appellants are entitled to qualified immunity from appellees' claims of wrongful discharge, this court does not determine whether *Benton*'s holding extends from the Arkansas Civil Rights Act to the Arkansas Whistle-Blower's Act.

A successful claim of battery would require that Scantlin and Ridenhour prove that Brenaman intended to cause harmful or offensive contact with them or acted with the intent to create the apprehension of some harmful or offensive contact and that this contact resulted in and caused damages. *See* AMI Civ. 418 (2018); *Haley v. Elkins*, 2019 Ark. App. 247, at 8, 576 S.W.3d 111, 116–17. Scantlin alleges that Brenaman came into "offensive contact" with her person when he "ripped" the papers out of her hands. Scantlin does not allege that Brenaman physically touched her person, nor does she allege that she suffered any physical damage because of this incident. Moreover, this incident occurred nearly three months before Scantlin submitted her resignation; thus, even if she was constructively terminated, this incident was not the direct cause of her termination. Damages for claims of battery may encompass medical expenses, impaired physical and mental abilities, pain and suffering, mental anguish, lost earnings, loss of earning capacity, and any other loss directly attributed to the assault and battery. 1 Howard W. Brill & Christian H. Brill, *Arkansas Law of Damages* § 33.6, Westlaw (database updated Oct. 2024); *Haley*, 2019 Ark. App. 247, at 9, 576 S.W.3d at 117. Accordingly, looking at all evidence in the light most favorable to Scantlin, she has not pled sufficient facts to support a claim of battery against Brenaman.[2]

B. Assault

---

[2]Scantlin does not allege that Mayor Rieff committed a battery against her. Likewise, Ridenhour does not allege that either Brenaman or Mayor Rieff committed a battery against her.

7

A claim of assault requires that Scantlin prove that Brenaman (1) "acted in such a manner as to create a reasonable apprehension of immediate harmful or offensive contact upon" Scantlin's person; (2) intended to cause that apprehension; and (3) Scantlin was actually apprehensive. AMI Civ. 417 Westlaw (Nov. 2024 update). Viewing the evidence in the light most favorable to Scantlin, there is at least a material question of fact regarding whether Brenaman's "ripping" the papers from Scantlin's hand, slamming the door in her face, yelling while standing over Scantlin to such a degree that customers asked if she was okay, and slamming doors and storming around upset was sufficient behavior to create a reasonable apprehension of imminent harmful or offensive conduct and whether this was Brenaman's intent. Furthermore, Scantlin's calling Chief Webb to intervene between her and Brenaman combined with Scantlin's testimony that she was "very intimidated" by Brenaman creates a question of fact regarding whether there was a reasonable apprehension on Scantlin's part.[3] Accordingly, Brenaman is not entitled to statutory immunity as to

---

[3]The court notes that Scantlin states in her deposition that she was not afraid Brenaman would physically harm her; however, this testimony appears to contradict her testimony that she called Chief Webb to intervene between her and Brenaman on at least one occasion and that she was very intimidated by Brenaman. For the purposes of the interlocutory appeal, this court does not make factual determinations and must view all evidence in the light most favorable to appellees as the nonmoving parties. *See City of Farmington*, 366 Ark. at 477, 237 S.W.3d at 4.

Scantlin's assault claim.[4] Ridenhour does not argue, nor does her complaint suggest, that she was ever assaulted by either Mayor Rieff or Brenaman.

## C. Outrage

To establish a claim of outrage, Scantlin and Ridenhour must demonstrate the following elements: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was "extreme and outrageous," was "beyond all possible bounds of decency," and was "utterly intolerable in a civilized community"; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. *Crockett v. Essex*, 341 Ark. 558, 564, 19 S.W.3d 585, 589 (2000) (citing *Angle v. Alexander*, 328 Ark. 714, 945 S.W.2d 933 (1997)).

The type of conduct that meets the standard for outrage must be determined on a case-by-case basis. *Id.* This court gives a narrow view to the tort of outrage and requires clear-cut proof to establish the elements in outrage cases. *Id.* Merely describing the conduct as outrageous does not make it so. *Id.* We have taken a strict approach in determining the validity of outrage claims and recognized that "the tort of outrage should not and does not

---

[4]Liability for an assault or an assault and battery is not necessarily restricted to the actual participants; any person who is present, encouraging, or inciting an assault and battery by words, gestures, looks, or signs or who by any means approves the same is in law deemed to be an aider and abettor and liable as a principal, and such person assumes the consequences of the act to its full extent as much as the party who does the deed. *Hargis v. Horrine*, 230 Ark. 502, 323 S.W.2d 917 (1959). Scantlin does not allege any facts to support a claim that Mayor Rieff aided or abetted in any potential assault by Brenaman.

9

open the doors of the courts to every slight insult or indignity one must endure in life." *Id.* at 564, 19 S.W.3d at 589. As to the final element, the Arkansas Supreme Court has previously held that depression combined with inability to sleep or eat, lost weight, and entering a hospital a few weeks after the incident is insufficient to support an outrage claim. *Givens v. Hixson*, 275 Ark. 370, 372, 631 S.W.2d 263, 264 (1982) (plaintiff testified he "was depressed, could not sleep or eat, lost weight, and entered a hospital a month later (apparently owing to a heart condition)"); *see also Island v. Buena Vista Resort*, 352 Ark. 548, 103 S.W.3d 671 (2003) (no outrage proved when the plaintiff's alleged emotional distress was not severe, plaintiff did not allege any peculiar susceptibility to emotional distress, and the effect on the plaintiff of the conduct complained of was inconsequential). Neither Scantlin nor Ridenhour allege any mental-health treatment, let alone hospitalization; furthermore, neither alleges any negative lingering mental-health issues stemming from her employment with the City of Highfill. Scantlin further testified that even with Brenaman regularly yelling at her, she was never in fear for her life or her physical safety. While the court does not condone Brenaman's behavior, it is not deemed outrageous as required for the tort of outrage. Accordingly, even reading the pleadings in the light most favorable to Scantlin and Ridenhour, they have failed to allege the severe emotional distress required to support a claim of outrage.

In sum, viewing the evidence in the light most favorable to Scantlin and Ridenhour, they have not alleged sufficient facts to support claims for battery and outrage against any

party. Scantlin, however, has pleaded sufficient facts to support a claim, for the purposes of this interlocutory appeal only, that she was assaulted by Brenaman.

IV. *Qualified Immunity*

The analysis used by this court in determining whether summary judgment on the ground of qualified immunity is appropriate is derived from the standard used for qualified-immunity claims in federal civil-rights actions. *Smith v. Brt*, 363 Ark. 126, 211 S.W.3d 485 (2005). Under this analysis, summary judgment based on qualified immunity is precluded only when the plaintiff has (1) asserted a statutory or constitutional violation, (2) demonstrated that the statutory or constitutional right is clearly established, and (3) raised a genuine issue of fact as to whether the official would have known that the conduct violated that clearly established right. *Id.*; *Robinson v. Beaumont*, 291 Ark. 477, 725 S.W.2d 839 (1987). Therefore, "[a]n official is immune from suit if his or her actions did not violate clearly established principles of law of which a reasonable person would have knowledge." *Smith*, 363 Ark. at 131, 211 S.W.3d at 489. We have noted that this objective reasonable-person standard is a legal inquiry and that whether summary judgment on grounds of qualified immunity is appropriate from a particular set of facts is a question of law. *Id.*; *Sullivan v. Coney*, 2013 Ark. 222, at 6, 427 S.W.3d 682, 685–86.

In deciding whether appellants are entitled to qualified immunity, we must first determine which statutory and/or constitutional violations appellees have alleged in their complaint. Scantlin and Ridenhour allege that by constructively terminating them, appellants violated the Arkansas Whistle–Blower Act, codified at Ark. Code Ann. §§ 21-1-

11

601 et seq. (Repl. 2022). Scantlin and Ridenhour also argue that their claim that appellants violated the Arkansas Whistle–Blower Act demonstrated that their termination was wrongful and against public policy. Scantlin and Ridenhour further contend that a termination in violation of public policy is an exception to the at-will employment doctrine and that appellants are not entitled to qualified immunity for this claim.

A. Arkansas Whistle-Blower Act

Under the Arkansas Whistle–Blower Act, a public employer is prohibited from taking adverse action against an employee who communicates in good faith to an appropriate authority government waste or the violation of a rule, law, or regulation. Ark. Code Ann. § 21-1-603(a). Specifically, the Act states the following:

> A public employer shall not take adverse action against a public employee because the public employee or a person authorized to act on behalf of the public employee communicates in good faith to an appropriate authority . . . [a] violation of suspected violation of a law, rule, or regulation adopted under the law of this state or a political subdivision of the state.

Ark. Code Ann. § 21-1-603(a)(1)(B). The Act further articulates that an "adverse action" means to "discharge, threaten, or otherwise discriminate or retaliate against a public employee in any manner that affects the employee's employment, including compensation, job location, rights, immunities, promotions, or privileges." Ark. Code Ann. § 21-1-602(1).

In the instant case, neither Scantlin nor Ridenhour present *any* facts to support the claim that they received an adverse action for reporting Brenaman's behavior to Mayor Rieff. In fact, Scantlin admits that after one such occasion, she received an apology from Brenaman. At most, Scantlin alleges that her reports fell on "deaf ears." Again, neither

12

Scantlin nor Ridenhour contend that Brenaman ever assaulted or abused them *in retaliation* for reporting his behavior. Neither do they allege that Mayor Rieff ever took actions against them in any form, let alone in retaliation for their reports against Brenaman. A lack of obvious or implied retaliation combined with no direct adverse action taken *by any party* is not sufficient to support a claim of adverse action under the Act.

Under our qualified-immunity analysis, however, we agree that *even if* Scantlin and Ridenhour have asserted a violation of a clearly established right under the Act, they have failed to raise a genuine issue of fact as to whether appellants would have known that their conduct violated that clearly established right. Neither Scantlin nor Ridenhour has shown that appellants would have reasonably believed that they were violating their rights under the Arkansas Whistle–Blower Act by constructively terminating[5] them under the circumstances in this case.

## B. Arkansas's Public Policy

Finally, Scantlin and Ridenhour argue that their constructive termination went against Arkansas's public policy. In Arkansas, an employer may terminate an employee for good cause, bad cause, or no reason at all under the employment-at-will doctrine. *Hice v. City of Fort Smith*, 75 Ark. App. 410, 58 S.W.3d 870 (2001). The question of malice on the part of the employer is irrelevant. *Id.* Under a public-policy exception, an at-will employee may sue for termination "in violation of a well-established public policy of the state." *Sterling Drug,*

---

[5]Assuming for the sake of argument that they were constructively terminated.

*Inc. v. Oxford*, 294 Ark. 239, 743 S.W.2d 380 (1988). This exception applies only when the reason alleged to be the basis for a discharge is so repugnant to the general good as to deserve the label "against public policy." *Tripcony v. Ark. Sch. for the Deaf*, 2012 Ark. 188, at 9, 403 S.W.3d 559, 564. The limited public-policy exception does not "protect merely private or proprietary interests." *Id.* at 9, 403 S.W.3d at 563. When a wrongful-termination claim seeks only the redress of a private wrong, the public-policy exception does not apply, and the complaint does not state facts upon which relief can be granted. *Smith v. Am. Greetings Corp.*, 304 Ark. 596, 804 S.W.2d 683 (1991). To invoke the public-policy exception to the at-will employment doctrine, a plaintiff must identify a public policy outlined in our statutes. *Tripcony*, 2012 Ark. 188, 403 S.W.3d 559.

As applicable to the instant case, the exception may apply when an employee reported a violation of state law or refused to violate a state statute. *Id.* However, the public-policy exception does *not* apply when an employee reported practices that did not violate a state statute, even if the practices or actions affected the public good. *See Palmer v. Ark. Council on Econ. Educ.*, 344 Ark. 461, 40 S.W.3d 784 (2001). Neither Scantlin nor Ridenhour claims that she reported any behavior that violated a state statute. They do, however, allege that appellants' violation of the Arkansas Whistle-Blower Act is against Arkansas public policy. As explained previously, this claim fails because the conduct alleged by both Scantlin and Ridenhour does not constitute a violation of the Act. Thus, appellants are entitled to qualified immunity on this claim.

C. Intentional Torts

As for Scantlin's remaining claim of assault against Brenaman, the Arkansas Supreme Court has routinely held that "intentional torts overcome the immunity extended to State officers and employees." *Fuqua v. Flowers*, 341 Ark. 901, 906, 20 S.W.3d 388, 391 (2000); *see Deitsch v. Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992). Accordingly, Brenaman is not entitled to qualified immunity as to Scantlin's assault claim.

V. *Conclusion*

The circuit court erred by denying the City of Highfill statutory immunity. The circuit court also erred by denying Mayor Rieff statutory and qualified immunity as to all claims. Finally, Brenaman is entitled to both statutory and qualified immunity for all claims alleged by Ridenhour and all claims alleged by Scantlin, except for the claim of assault. Accordingly, we affirm the circuit court's denial of Brenaman's statutory immunity for Scantlin's claim of assault, and we otherwise reverse and remand for further proceedings consistent with this opinion.

Affirmed in part; reversed and remanded in part.

KLAPPENBACH, C.J., and MURPHY, J., agree.

*Harrington, Miller, Kieklak, Eichmann & Brown, P.A.*, by: *Thomas N. Kieklak, R. Justin Eichmann*, and *Susan Keller Kendall*; and *Williams Law Firm*, by: *Jay Williams*, for appellants.

*Miller, Butler, Schneider, Pawlik & Rozzell, PLLC*, by: *Kristin L. Pawlik*, for appellees.